UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNIVERSAL CONNECTIVITY
TECHNOLOGIES INC.,

Plaintiff,

v.

HP INC.,

Defendant.

Case No.  24-cv-04097-NW (SVK)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION TO STRIKE INFRINGEMENT CONTENTIONS; RESOLVING DISCOVERY DISPUTE AT DKT. 230**

Re: Dkt. Nos. 199, 230

This is the latest in a series of orders related to Plaintiff Universal Connectivity Technologies Inc.'s ("UCT") infringement contentions in this case.  Pending before the Court is Defendant HP Inc.'s ("HP") Renewed Motion to Strike Plaintiff's Third Amended Infringement Contentions, (Dkt. 199 (the "Motion")), following this Court's September 8, 2025 Order granting in part (with partial leave to amend) and denying in part HP's first motion to strike, (*see* Dkt. 160, *motion for relief from nondispositive pretrial order denied,* Dkt. 192).  The Motion was referred to the undersigned on December 1, 2025.  Dkt. 204.  The matter came on for hearing on February 3, 2026.  Having considered the Parties' submissions and oral arguments, the relevant law, and the record in this matter, the Court **GRANTS IN PART** and **DENIES IN PART** HP's Motion.

I.    BACKGROUND

The Parties are familiar with the factual and procedural history of this dispute, as set forth in Dkts. 137 ("Order re Motion to Amend") and 160 ("First Order re MTS").  The Court thus summarizes the history only briefly, below.

In short, "this action was originally filed in the Western District of Texas on September 28, 2023, accusing certain "HP laptops, desktops, monitors, and docking stations" of infringing eight patents based on those products' compliance with various data transfer standards involving USB,

DisplayPort, PCIe power and HDMI connections." Dkt. 160 at 2 (citing, *generally*, Dkt. 1; Dkt. 101 at 2).[1] Subsequent to this Court's First Order re MTS, the Parties stipulated to dismissal of two patents; six patents remain at issue in this litigation. *See* Dkt. 160 at 2-3; Dkts. 183, 223 (the Honorable Noël Wise entering partial judgment re U.S. Patent Nos. '520 and '265).

### A. Procedural History re UCT's Infringement Contentions

UCT served two rounds of infringement contentions in the Western District in the Spring of 2024, (*see* Dkt. 101 at 2), and on July 8, 2024, the Western District transferred venue to this District, (Dkt. 52). After UCT initially served updated contentions on October 21, 2024, HP informed UCT of purported deficiencies in its contentions; UCT moved to amend its contentions, while HP sought leave to move to strike the contentions in February 2025. *See* Dkt. 101 at 3; Dkt. 130 at 2 (recounting history). On May 29, 2025, this Court granted UCT's motion to amend, denied HP's request to move to strike the original contentions as moot and ordered abbreviated briefing on a motion to strike the contentions as amended, to the extent any asserted deficiencies remained. Dkt. 130 at 6-7.

The Court's First Order re MTS ultimately approved of certain parts of UCT's infringement contentions, struck certain parts of the contentions with leave to amend and struck certain parts of the contentions without leave to amend. *See, generally*, Dkt. 160. In relevant part, the Court struck UCT's contentions as to representative products with leave to amend. *Id.* The Court explained that because UCT's infringement theories were based on "both compliance with [industry standards] and HP's implementation of those standards," UCT "must provide at least a preliminary explanation as to how it expects HP's implementation in the representative products to be the same as HP's implementation in other products" even prior to discovery of technical information such as source code. Dkt. 160 at 5-7 (emphasis omitted). Judge Wise denied UCT's motion for relief from the First Order re MTS on October 28, 2025. Dkt. 192.

UCT served the operative, third amended infringement contentions ("TAIC") on October 15, 2025. Dkt. 208 at 6. The TAIC accuse, as did UCT's prior contentions, over 2,000 of HP's

---

[1] Unless stated otherwise, all page numbers referred to herein are ECF page numbers.

products of infringement.  *See* Dkt. 230 at 2;  Dkt. 160 at 3 (citing Dkt. 138-2 at 5;  Dkt. 101-4 at 3);  Dkts. 199-3–4.  In its TAIC, UCT does not chart each of the accused products but rather continues to rely on representative products.  *See* Dkts. 199-3–4.  On November 18, 2025, HP renewed its motion to strike on the narrower grounds that UCT's "representativeness" contentions remain deficient.  *See* Dkt. 199.  The Motion was fully briefed on December 19, 2025.  Dkts. 208, 211.  On January 29, 2026, the Court issued a tentative ruling explaining that it was inclined to grant the Motion as to peripheral products but deny the Motion as to accused laptops and desktops and order certain discovery as to Intel-based products.  Dkt. 234.  The Court heard oral argument on February 3, 2026.  Dkt. 241.

### B.    Other Relevant Procedural History

HP's initial challenge to UCT's contentions was brought before the Court in February, 2025.  *See* Dkts. 101, 102.  Judge Wise held a claim construction hearing on October 15, 2025, and issued a Claim Construction Order on November 7, 2025.  Dkts. 183, 197.  Fact discovery in this case was segmented per agreement of the Parties:  "discovery of documents and things from third parties" has been open since April 3, 2024, but discovery as between the Parties was closed[2] "until one day after issuance of the *Markman* order" in this case.  Dkt. 116 at 6 (citing the Parties' agreement in Dkt. 31, ¶ 10).

Fact discovery is currently scheduled to close February 27, 2026, with opening expert reports due March 20, 2026.  Dkt. 220.  Dispositive and *Daubert* motions are due May 8, 2026.  *Id.*  After multiple case schedule amendments, Judge Wise noted that "the Court is not inclined to alter the deadline to file dispositive and *Daubert* motions or the trial date."  Dkt. 220 at 1.

## II.    LEGAL STANDARD AND PRIOR RULING

### A.    Patent Local Rule 3-1

"This District's Patent Local Rules aim to make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."  *Unicorn Energy AG v. Tesla Inc.*, No. 21-cv-07476-BLF (SVK), 2023 WL

---

[2] Except for UCT's Interrogatory nos. 1-5.

United States District Court
Northern District of California

4670294, at *1 (N.D. Cal. July 19, 2023) (quotation marks and citations omitted). The purpose of the infringement and invalidity contentions required under the Patent Local Rules is to "require the parties to crystallize their theories of the case early in the litigation" in order to "further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their claims." *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694, at *1 (June 11, 2015) (citations omitted).

Under Patent Local Rule 3-1, the party alleging patent infringement must serve infringement contentions. Patent L.R. 3-1. Among other things, the contentions must identify each claim of each patent in suit that is allegedly infringed and, for each asserted claim, "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party is aware." Patent L.R. 3-1(a), (b).

In general, this District does "not tolerate broad categorical identifications or the use of mere representative examples," and demands "a full list of accused products … if they are known to the plaintiff." *Oyster Optics, LLC v. Ciena Corp.*, No. 20-cv-02354-JSW (LB), 2022 WL 561931, at *2 (N.D. Cal. Feb. 24, 2022) (cleaned up) (citation omitted). However, "representative products may … be charted when supported by adequate analysis showing that the accused products share the same critical characteristics" as the representative products. *Id.* at *3 (internal quotations and citations omitted). The infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement and to raise a reasonable inference that all accused products infringe." *SAGE Electrochromics Inc v. View Inc*, No. 12-cv-06441-JST (DMR), 2013 WL 4777164, at *1 (N.D. Cal. Sept. 6, 2013) (citing, *inter alia*, *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002)).

////

////

////

////

////

4

### B.    The Court's Prior Guidance on Representative Products

In its First Order re MTS, the Court held that "UCT has properly identified one 'critical characteristic' shared by [the] accused products (which standards they are [allegedly] compliant with) but failed to identify another equally critical characteristic (common implementation of the standard in an allegedly infringing manner)." Dkt. 160 at 20. Even in the absence of discovery as to implementation (*e.g.*, source code), the Court explained that "UCT must [] provide [a] preliminary explanation for how it expects HP's implementation in the representative products to be the same as its implementation in other products." Dkt. 160 at 20.

## III.    DISCUSSION

HP's Motion renews its challenge to UCT's reliance on representative products. *See, generally*, Dkt. 199. So, as an initial matter, the Court determines what those products are.

UCT's infringement contentions set forth a variety of "exemplary" accused products, including laptops, desktops and peripheral products such as monitors, cameras, and solid-state drives ("SSDs"). *See* Dkts. 208-16, 208-18–21. However, as HP points out, "[w]hile some of UCT's claim charts list an "exemplary" monitor and/or docking station in the introductory paragraphs to the chart, in each case the product charted for each limitation is a laptop." Dkt. 199 at 6. HP asserts that the only products charted for each limitation of each asserted claim are:

- HP EliteBook 655 G9 (laptop) for U.S. Patent no. 7,154,905 (the "'905 Patent");
- HP EliteBook 655 G9 (laptop) for U.S. Patent no. 7,187,307 (the "'307 Patent");
- HP Pavilion 15z (laptop) for U.S. Patent no. 7,746,798 (the "'798 Patent");
- HP EliteBook 655 G9 (laptop) for U.S. Patent no. 8,680,712 (the "'712 Patent");
- HP EliteBook 865 G9 AMD Ryzen 5 Pro (laptop) for U.S. Patent no. 7,921,231 (the "'231 Patent"); and
- HP EliteBook 845 G9 AMD Ryzen 7 (laptop) for U.S. Patent no. 9,852,103 (the "'103 Patent").

Dkt. 199 at 5-6. Although UCT points to certain claim charts where its other "exemplary" products are mentioned, it does not refute the assertion that these other "exemplary" products are not fully charted. *See generally*, Dkt. 208 (*e.g.*, pointing to claim 8 of the '905 Patent as

identifying two HP monitors and including "exemplary evidence about the features of those monitors," but never arguing that its monitors or other peripheral products are charted for each limitation of the relevant claims); *see also, generally*, February 3, 2026 Hearing[3] (UCT's counsel did not argue it had any representative monitors, docking stations, or cameras).

It is axiomatic that, to be a representative product, a product must be fully charted, *i.e.*, charted for each limitation. *See* Patent L.R. 3-1(c) (infringement contentions must include charts "identifying specifically where and how **each** limitation of **each** asserted claim is found within **each** Accused [or, in this case, representative] Instrumentality." (Emphasis added)). Accordingly, only the above laptops are properly representative products.

HP's challenge is divided into three parts: (1) a challenge to all devices except the HP EliteBook 655 G9, HP Pavilion 15z and HP EliteBook 865 G9 laptops for the '905, '307, '798, and '103 Patents; (2) a challenge to *all* peripheral devices (*i.e.*, devices which are not personal computers ("PCs") such as laptops or desktops, *i.e.*, monitors, docking stations, cameras and SSDs) for all asserted patents; and (3) a challenge to Intel-based products for the '905, '307, '798 and '103 Patents. The Court addresses each argument in turn.

### A.    UCT's Contentions Are Sufficient to Provide HP with Notice of UCT's Theories of Infringement for Some of the Accused Personal Computers

HP does not dispute that, for the '905, '307, '798 and '103 Patents, UCT has sufficiently charted the HP EliteBook 655 G9, HP Pavilion 15z and HP EliteBook 865 G9 laptops. *See* Dkt. 199 at 7-8. Rather, HP points out that UCT's contentions are "based on [the] use of common components," AMD or Qualcomm processors[4], and that the only example UCT provides in the TAIC is "the AMD Carrizo architecture [] used by certain AMD processors." *Id.*; Dkt. 209-1 at 4-11. However, HP avers the AMD Carrizo is not present in the representative products. Dkt. 199 at 5, 8. As a result, it argues UCT's use of the HP EliteBook 655 G9, HP Pavilion 15z and HP

---

[3] Citations to the February 3, 2026 hearing in this Order are based on the audio recording available to the Court, because no transcript is available as of the date of this Order. The Court elects not to delay issuance of the Order due to the upcoming close of fact discovery.

[4] As made clear at the hearing, these processors could be either central processing units ("CPUs") or integrated processors.

EliteBook 865 G9 laptops as representative products is insufficient as to all other accused products – which may include AMD processors from different processor "families" or from different manufacturers. *See* Dkt. 199 at 5, 7-8.

UCT responds that HP's argument misses the fact that UCT has alleged alternate infringement theories based on the CPU or integrated processor or based on graphics cards (GPUs) supplied by AMD and NVIDIA. Dkt. 208 at 6-7. UCT urges that because HP's Motion did not address these GPU theories, it should be denied. *Id.* UCT also responds that its representative products do include AMD processors, *e.g.*, an AMD Ryzen7 processor that "is part of the more recent 'Renoir' product family," and that, being an AMD processor, its contentions are sufficient. *Id.* at 7-9. HP, in reply and at the hearing, raised an additional, related argument that, given UCT's reliance on GPUs, there is a more fundamental deficiency because UCT's contentions do not make clear whether the CPU and GPU theories of infringement are "alternatives" or "standalone" theories, or whether UCT intends to assert them in some form of combination. *See* Dkt. 211 at 4-5. The Court addresses HP's latter argument first, before returning to HP's primary argument.

### 1. UCT's Contentions Provide Reasonable Notice for Its GPU Theories and the Court Will Consider them in the Representativeness Analysis

At their core, "infringement contentions must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement and to raise a reasonable inference that all accused products infringe." *SAGE Electrochromics*, 2013 WL 4777164, at *1 (N.D. Cal. Sept. 6, 2013) (citations and quotation marks omitted). HP is correct that it is entitled to know whether UCT's theories are "standalone" or "combination" theories. UCT's contentions make clear the following:

- For the '905 and '307 Patents, the TAIC accuse AMD and Qualcomm CPUs or integrated processors, as well as AMD and NVIDIA GPUs in the alternative, *i.e.*, as standalones, of implementing the accused DisplayPort functionality. Dkt. 209-1 at 4-7.

- For the '798 Patent, the TAIC accuse AMD and Qualcomm CPUs or integrated

processors of implementing the accused USB and PCIe functionality, as well as AMD and NVIDIA GPUs in the alternative, *i.e.*, as standalones, of implementing the accused PCIe functionality. *Id.* at 7-8.

- For the '103 Patent, the TAIC accuse only CPUs and integrated processors supplied by AMD of implementing the accused functionality. *Id.* at 11.

For the '905 and '307 Patents, the Court finds that UCT's contentions employ parallel language that is readily apparent as being in the alternative – not as referring to some undisclosed combination. *Id.* at 4-7. UCT's counsel confirmed this understanding of the contentions both in its brief and unambiguously at the hearing. *See* Dkt. 208 at 7-9; *see also, generally*, February 3, 2026 Hearing. For the '798 Patent, at least as to the PCIe functionality accused by UCT, there is similarly no issue. *See* Dkt. 209-1 at 7-8; *see also, generally*, February 3, 2026 Hearing. As for the '103 Patent, and the '798 Patent as to USB functionality, the omission of such parallel language makes equally clear that UCT accuses only the AMD/Qualcomm CPUs and integrated processors of performing the infringing functionality. Dkt. 209-1 at 7-8, 11. Thus, for all four patents, UCT's contentions provide reasonable notice to HP of whether UCT's theories are asserted as standalone theories or as combinations.

### 2. Nonetheless, UCT Has Not Met the Standard for Accusing <u>All</u> Accused Products Based on the Representative Products

However, UCT's additional contentions as to GPU functionality do not fully resolve HP's primary argument. Even when the Court considers UCT's additional NVIDIA or AMD GPU architecture, this does not change the fact, as HP points out, that there will be some accused products which do not rely on the specific CPUs, integrated processors or GPUs as those included in the representative products. *See* Dkt. 211 at 4-5. The Court agrees with HP in part.

As the Court previously explained, representative-product contentions require "adequate analysis showing that the accused products share the same critical characteristics" as the representative products. O*yster Optics*, 2022 WL 561931, at *3 (cleaned up) (citations omitted). For any PCs that share the *same* CPU, integrated processor or GPU as the representative laptops, the Court finds UCT's contentions meet the standard. UCT has shown that the accused PCs

(allegedly) meet the same industry standards (as this Court found in the First Order re MTS) and has now pointed to *actually shared* components that UCT expects will yield the same implementation of those standards.  Although the analysis in UCT's contentions is not complete (and cannot be complete in the absence of source code, which the Court understands is being produced in the coming days), it is sufficient for the Court to draw the reasonable inference that all of the accused PCs with the same components will implement the standards in the same way as the representative laptops to place HP on notice of UCT's infringement theories.

The analysis is more complicated with regard to accused products that do **not** share a precise component accused of infringing with a representative product.  Here, the thrust of UCT's argument is its contention that one type of AMD processor (*e.g.*, the AMD "Renior," "Zen 2" or "Zen 3" processor families, which are included in at least one of the charted, representative products) will operate in much the same way as other processors (*e.g.*, the AMD "Carrizo" architecture / processor family) which are not.  *See* Dkt. 208 at 8-9.  HP argues that UCT does not explain *why* the Court (or HP) should expect that to be the case.  *See* Dkt. 211 at 4-6.

To be sure, the "representative product" "analysis cannot just be based on the patentee's say-so. … A patentee must state how [products are representative]."  *Oyster Optics*, 2022 WL 561931, at *3.  Accordingly, UCT's contentions are only sufficient as to representativeness if there is sufficient analysis to place HP on notice of the theory of infringement and "to raise a reasonable inference that all accused products infringe."  *See SAGE Electrochromics*, 2013 WL 4777164, at *1 (N.D. Cal. Sept. 6, 2013) (citations and quotation marks omitted).  UCT relies principally on inferences, and in the absence of more concrete analysis, whether the inferences baked into UCT's argument, (*see* Dkt. 208 at 8-9), are reasonable is critical.

The Court finds that the reasonableness of the inference that an accused product will implement the accused standards in the same way as a representative product varies and is more attenuated for some products than for others.  Based on the TAIC, and in the absence of any analysis based on source code or technical documents in the TAIC, the Court finds that:

- It is reasonable to expect that the same kinds of processors (*e.g.*, CPUs) in the same architecture family (*e.g.*, AMD Zen1 and AMD Zen2) will implement the same

industry standards at issue here in the same way when used in the same kinds of devices (here, PCs).

- It is also reasonable to expect that same kinds of processors by the same manufacturer will implement the industry standards at issue here in the same way when used in the same kinds of devices (here, PCs).

- However, it is not reasonable to expect, in light of the bare analysis provided by UCT, that either different processors (*e.g.*, CPUs versus GPUs) or the same kinds of processors from different manufacturers (*e.g.*, AMD versus Qualcomm) would implement the relevant industry standards in the same way, even in the same kinds of devices (here, PCs).[5]

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** HP's Motion insofar as it seeks to strike PCs (*i.e.*, laptops and desktops) aside from the charted HP EliteBook 655 G9, HP Pavilion 15z and HP EliteBook 865 G9 laptops from the '905, '307, '798 and '103 Patents:

- UCT's contentions are sufficient to accuse **only** desktops and laptops that contain a CPU, integrated processor **or** GPU (any one of the three, based on UCT's representation that its theories of infringement are alternative) from the same manufacturer as the representative product for the asserted patent;  in other words,

- UCT's contentions are **STRICKEN** insofar as they accuse products wherein the accused functionality is implemented by processors from manufacturers whose processors are not charted via the representative product for the asserted patent.

UCT **shall serve** conforming amendments to its infringement contentions to remove stricken products as discussed in Section III.D., below.

### B.    UCT's Contentions Are Insufficient with Regard to Peripheral Products

With regard to peripheral products—*i.e.*, monitors, docking stations, solid-state drives (SSDs) and cameras—as the Court explained above at the outset, (*see* Section III), UCT did not

---

[5] In holding that UCT has satisfied its burden of raising a "reasonable inference" and providing "reasonable notice" at the infringement-contention stage, the Court says nothing about the ultimate viability of UCT's theories.

rebut HP's assertion, either in its opposition or at the hearing, that only laptops are fully charted and thus constitute representative products. *See, supra* at 5-6. Thus, the only basis for the TAIC to accuse peripheral products of infringement is because they include the same processors, whether CPUs, integrated processors or GPUs, as the representative laptops.

However, engaging in the same analysis as in Section III.A.2., above, the Court does not agree that UCT has raised a reasonable inference of infringement or put HP on notice as to UCT's theories of infringement. *Contra supra*, § III.A. (discussing the bedrock requirements of the Patent Local Rules). To the contrary, whereas the Court explained that, for example, it is reasonable to expect that processors in the same architecture family will implement the industry standards at issue here in the same way *for the same kinds of devices* (*e.g.*, PCs), there is no basis for such an inference as to peripheral devices. *Id.* UCT has not explained how, for example, a docking station utilizes a graphics card in the same way as a laptop in order to implement the same DisplayPort, PCIe or USB industry standards. *See* Dkt. 200-1 at 9-16.

Thus, HP's Motion is **GRANTED** as to peripheral products for all asserted patents.[6] Peripheral products are **STRICKEN** from UCT's TAIC without leave to amend.[7]

### C.    The Parties Agree that UCT is Not Accusing Intel-based Products that Lack Other Third-Party Processors for the '905, '307, '798 and '103 Patents

Finally, as made clear at the hearing, there is not a true dispute between the Parties as to whether licensed, Intel-based products may be properly accused in this case. UCT agrees that, to the extent a product performs the accused functionality solely using an Intel CPU or Intel GPU (or integrated processor), such a product is not accused of infringement. *See* Dkt. 208 at 16-17; *see also* February 3, 2026 Hearing. HP seeks clarity and seeks to have any such products that remain in the TAIC stricken from the contentions. *See* Dkt. 211 at 11-12; February 3, 2026 Hearing.

The Court agrees with HP. However, UCT cannot yet know which Intel-based products

---

[6] At the hearing, UCT did not present further argument as to peripheral products. *See, generally*, February 3, 2026 Hearing. Rather, UCT represented it would stand on the arguments made in its opposition brief with regards to any appeal.

[7] UCT also acknowledge at the hearing that time was now too short for it to conduct discovery and amend to add representative peripheral products.

United States District Court
Northern District of California

must be removed from the contentions versus which products remain, because HP has not produced a component list for these products. *See* Dkt. 230; *see also, infra*, § III.D (resolving discovery dispute). The Parties both acknowledge that, if a product includes an Intel CPU but, for example, an NVIDIA GPU, it may yet be accused of infringement. *See* February 3, 2026 Hearing.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** HP's Motion as to Intel-based products:

- Intel-based products are **STRICKEN** from the contentions as to the '103 Patent, because this patent accused only the CPU (or an integrated processor) of infringement and, thus, there is no possibility of a "mixed" Intel-based product;
- Intel-based products in which solely Intel processors perform the alleged functionality are **STRICKEN** from the '905, '307 and '798 Patents.

At the hearing, HP further argued that the Court should "strike" Intel-based products from any theories of infringement for the '905, '307 and '798 Patents wherein the CPU functionality, and not the GPU functionality, is accused of infringement. This request is inappropriate at this juncture because (1) it does not appear fairly raised in HP's Motion and (2) it is not properly a request to "strike" anything, but rather (as explored at the hearing) seeks to limit the evidence (Intel-CPU functionality) that UCT and/or its experts may present. The Court does not reach the merits of the request in this Order. The Court notes that Parties are held to representations made before the Court, whether in briefing or at a hearing, and UCT has represented that its CPU and GPU theories are "standalone" theories, not combination theories. *See, supra*, § III.A.

UCT **shall serve** conforming amendments to its infringement contentions to remove stricken products as discussed in Section III.D., below.

### D.    The Parties' Discovery Dispute re HP's Identification of Components; Timeline for UCT to Amend its Contentions

Finally, in its Motion, HP sought "a limited stay of discovery with respect to the accused products which UCT has not charted" until the Court ruled on HP's Motion; related thereto, prior to the hearing, the Parties filed a Joint Discovery Statement directed to this issue. Dkt. 199 at 12; Dkt. 230. As is clear from the Court's analysis above, it is quite possible that UCT's TAIC

include accused products which even UCT agrees, and the Court finds, are not properly accused. *See, supra*, §§ III.A, C. However, UCT cannot know what to remove (and the Court cannot know which products in particular to strike) absent an identification of components by HP. Thus, and also in accordance with HP's proposed compromise, the Court **ORDERS** that:

- **No later than February 6, 2026**, HP shall produce an Excel spreadsheet containing an identification of CPUs, GPUs, and PD controllers for each accused PC product SKU. For the avoidance of doubt, the Court interprets "PC product" to mean any personal computer, including both desktops and laptops.

- **No later than February 13, 2026**, UCT **shall amend** its contentions to conform with this Order by:
  - For the '905, '307 and '798 Patents, removing (a) any desktops and laptops that do not share a processor manufacturer (CPU, integrated processor or GPU) with the representative laptop charted for the patent at issue and (b) any Intel-based products that do not include a non-Intel CPU or GPU; and
  - For the '103 Patent, removing any desktops and laptops that do not have an AMD CPU or integrated processor.

Leave to amend UCT's contentions is otherwise **denied**, as further amendments to add additional representative products at this stage would be highly prejudicial to HP. Indeed, as Judge Wise recently noted, albeit in the context of the motion-to-stay analysis, fact discovery closes on February 27, 2026, "[c]laim construction has already occurred" and "this case is not in its early stages." Dkt. 225 at 2. The undersigned agrees and also finds that amendments to cure the deficiencies identified herein are not justified in light of the four prior infringement contentions served in this case (two in this District, two in the Western District of Texas).

## IV.   CONCLUSION

For the forgoing reasons, HP's Renewed Motion to Strike is **GRANTED IN PART** and **DENIED IN PART** as set forth above, and leave to amend is **denied** except as to the conforming

////

////

United States District Court
Northern District of California

amendments (to be served after the discovery required from HP) identified above.

**SO ORDERED.**

Dated: February 4, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge

14