UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HP INC.,<br><br>　　　　　Defendant. | Case No. 24-cv-04097-NW<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: ECF No. 167 |

On September 18, 2025, Defendant HP, Inc. filed a motion for judgment on the pleadings. ECF No. 167.[1]  Having considered the parties' briefs and the relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES the motion.

## I.　　BACKGROUND[2]

### A.　　Factual and Procedural History

On September 28, 2023, Plaintiff Universal Connectivity Technologies Inc. ("UCT" or "Plaintiff") sued Defendant HP Inc. ("HP" or "Defendant") in the United States District Court for the Western District of Texas for the alleged infringement of eight patents: U.S. Patent Nos. 7,154,905, 7,187,307, 7,746,798, 7,856,520, 7,921,231, 8,680,712, 9,232,265, and 9,852,103.[3]

HP answered the complaint on January 8, 2024, then filed a motion to transfer on March 1, 2024.  After granting HP's motion, this case was transferred from the Western District of Texas to

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] The factual background is drawn from UCT's complaint.  ECF No. 1.

[3] The Court refers to these respectively as the: '905 patent, '307 patent, '798 patent, '520 patent, '231 patent, '712 patent, '265 patent, and '103 patent.

United States District Court
Northern District of California

this District on July 8, 2024.

Since the transfer, the parties engaged in claim construction and the Court issued a claim construction order on November 7, 2025.  ECF No. 197.  Per the scheduling order, fact discovery closes on February 27, 2026, and expert discovery closes May 1, 2026, with dispositive and *Daubert* motions heard soon afterward.  ECF No. 220.  Trial is scheduled to begin on September 21, 2026.  *Id.*

In mid-September, prior to the claim construction hearing, HP filed a motion for judgment on the pleadings asserting that two of UCT's patents, the '905 patent and the '798 patent, are invalid under 35 U.S.C. § 101.  ECF No. 167.  The matter is now fully briefed.  *See* ECF Nos. 184, 194.  HP filed a notice of supplemental authority on January 26, 2026.  ECF No. 229.

### B.    The '905 and '798 Patents

The '905 and '798 Patents have the same specification and claim priority to the same provisional application.  *See* '905 pat. at [60]; '798 pat. at [60].  Both patents "relate[] generally to communication techniques and particularly to communications between hosts and data store devices."  '905 pat. at 1:51–53; '798 pat. at 1:52–54.

Titled "Method and system for nesting of communications packets," the '905 patent claims are directed to the subject matter disclosed under the heading "1.4 Packet Preemption" of the specification, which "helps ensure that data store devices receive control packets as soon as possible without being slowed by network congestion as a result of data packets."  '905 pat. at 19:65–20:1.  The '905 patent describes how the "transmitting of control packets before data packers may help ensure that the control packets are not unnecessarily delayed by data packets, which may have a tendency to be quite large."  '905 pat. at18:54-57

As shown in Figure 13 (below), the transmitting device can interrupt the transmission of a data packet to transmit a control packet and then resume transmission of the data packet.



*Fig. 13*

2

Claim 21 explains this:

> 21. A communications device for transmitting packets via a communications link, comprising:
>
> a transmission component that transmits a first packet; and
>
> a preemption component that signals the transmission component to stop transmitting the first packet, transmits a preempt indicator indicating that a second packet is to be transmitted, transmits the second packet, and signals the transmission component to continue transmitting the first packet;
>
> wherein packets include in-band symbols and the indicators include one or more out-of-band symbols.

'905 pat., cl. 21. The Court construed several terms from the '905 patent, including "in-band symbols" as "a symbol normally appearing in a packet," "out-of-band symbols" as "a symbol not normally appearing in a packet," and the "preemption component" clause in accordance with its plain and ordinary meaning. ECF No. 197 at 22.

The claims of the '798 Patent relate to using "synchronization primitives" to indicate the packet type, which is discussed under the heading "1.2 Synchronization Primitive and Packet Type." *See generally* '798 Patent at 14:31–18:15. As the patent explains, the "rapid detection of packet type through a synchronization primitive, rather than through a packet header, can reduce the processing time of a switch." *Id.* at 14:58-61.

Additionally,

> [t]he use of multiple synchronization primitives allows for encoding packet type within a synchronization primitive. In particular, the transport layer provides the packet type to the link layer. The link layer can then transmit a synchronization primitive that indicates packet type immediately before the packet itself.

*Id.* at 14:41–46. As recited in Claim 19:

> 19. A communications device for transmitting packet types of packets[4], comprising:
>
> an identification component that identifies a packet type of a packet of symbols; and

---

[4] While the term "packet types of packets" is repetitive, it functions as an adequate description in the context of the '798 patent, which is a "Method and system for integrating packet type information with synchronization symbols." *See* '798 pat.

3

a transmission component that transmits a synchronization symbol that corresponds to the identified packet type, the transmitted synchronization symbol providing synchronization information and each packet type having a different synchronization symbol and permitting an external receiving node to properly align with a synchronization primitive to be correctly aligned on a symbol boundary, and that transmits the symbols of the packet.

*Id.* at 38:22–33. The Court construed the "identification component" clause as a means-plus-function term where the function "identifies a packet type of a packet of symbols / checks the field of the header that indicates packet type" and the structure is "a general-purpose processor, special-purpose processor, or logic circuit programmed to determine whether the packet was removed from a control queue or a data queue, and send an indication of whether the packet was removed from the control queue or the data queue to the transport layer." ECF No. 197 at 22.

## II.    LEGAL STANDARD

### A.    Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when . . . there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss and "the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (internal quotation marks and citations omitted); *see also United States v. In re Seizure of One Blue Nissan Skyline Auto., & One Red Nissan Skyline*, 683 F. Supp. 2d 1087, 1089 (C.D. Cal. 2010) ("The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss."). The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B.    Section 101 Patent Eligibility

Patent eligibility "is a question of law, based on underlying facts" that "may be, and

frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Dismissal is appropriate "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *Id.*

Section 101 "defines the subject matter that may be patented." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under Section 101, patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017). "Laws of nature, natural phenomena, and abstract ideas are not patentable," *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), because "they are the basic tools of scientific and technological work," which are "free to all . . . and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 70 (2012) (cleaned up). Allowing patent claims for such purported inventions "might tend to impede innovation more than it would tend to promote it." *Id.*

But courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice Corp. Pty.*, 573 U.S. at 217. "At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (cleaned up). So, "in applying the § 101 exception, [the Court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* (cleaned up).

To draw this distinction, the Court engages in a two-step "*Alice*" analysis. First, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. If so, the Court then assesses "whether the elements of each claim, both individually and as an ordered combination, . . . transform the nature of the claim into a patent eligible application." *Id.* at 217 (cleaned up). This second step of the analysis is "a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). Where the claims at issue are not directed to an abstract idea, a court need not reach the second

5

step of the *Alice* analysis. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) ("Because we hold that the asserted claims are not directed to an abstract idea, we do not proceed to the second step of the inquiry.").

## III.    DISCUSSION

In its motion for judgment on the pleadings, HP contends that the '905 and '798 patents are invalid because their claims fall within the "abstract ideas" exception to 35 U.S.C. § 101.  The analysis starts by identifying representative claims for each patent.

### A.    The '905 Patent

#### 1.    Representative Claim

The Court need not individually analyze every claim under the *Alice* rubric if certain claims are "representative." *Twilio, Inc.*, 249 F. Supp. 3d at 1141 (citing *Alice Corp. Pty.*, 573 U.S. at 224).  "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) and citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).  Claims that "contain only minor differences in terminology but require performance of the same basic process . . . should rise or fall together." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.,* 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017).  Additionally, a court "may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Here, HP contends that claim 21 is representative of all the other asserted claims from the '905 patent: independent claims 1, 8, 15, and 21, as well as dependent claims 22 and 23.  ECF No. 167 at 13.  UCT argues that independent claims 1, 8, and 15 "include additional limitations that are not adequately captured in claim 21." ECF No. 184 at 8.  In particular, UCT argues that "claims 1, 8, and 15 all require a second 'indicator'—a 'continue indicator'—that, like the 'preempt indicator' of claim 21, must also include 'one or more out-of-band symbols.'" *Id.*  UCT

United States District Court
Northern District of California

also argues that HP "fails to meaningfully engage with the asserted dependent claims." *Id.*

HP counters that "UCT does not identify any asserted claims that have 'distinctive significance' from representative claim 21." ECF No. 194 at 7. The Court agrees with HP. The presence of a "second indicator" in independent claims 1, 8, and 15 is not a distinctive significance from claim 21. As such, the Court treats claim 21 of the '905 patent as representative.

### 2.    The "Directed To" Inquiry

To begin, step one of the two-step *Alice* patent eligibility inquiry asks whether the claim is directed to a patent-ineligible abstract idea. *Alice Corp. Pty.*, 573 U.S. at 218. At this step, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020). In this case, the Court begins with the "directed to" inquiry, by asking what the '905 patent asserts to be the focus of the claimed advance. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) ("We have approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art. In conducting that inquiry, we must focus on the language of the asserted claims themselves, considered in light of the specification." (cleaned up).)

Finding a claim's "focus" requires a delicate balancing act. While the process necessarily requires some high-level description, the Court must articulate "what the claims are directed to" with "enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

HP argues:

> The asserted claims of the '905 patent recite generic, results-oriented steps for transmitting and receiving data packets in a particular order. These steps include: "transmitting packets via a communications link," "transmit[ting] a first packet," "signal[ling] the transmission component to stop transmitting the first packet," "transmit[ting] a preempt indicator indicating that a second packet is to be transmitted," "transmit[ting] the second packet," and "signal[ling] the transmission component to continue transmitting the first packet."

ECF No. 167 at 14.  UCT counters that the '905 patent claims "are directed to improved transmitting and receiving devices that communicate over a serial communications link and implement packet preemption functionality through the use of 'in-band symbols' and 'indicators' that 'include one or more out-of-band symbols.'"  ECF No. 184 at 9.  UCT argues that HP's interpretation ignores the claim language as a whole, which improperly limits the invention to a specific technological context.  *Id.*

The Court agrees with UCT that the focus must be on the claim language.  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023).  The Court finds that when considered in its totality, the language of claim 21 indicates that the claim is directed to a device that transmits packets via a communications link.  '905 pat., cl. 21.  That device accomplishes this transmission:

- through the use of a transmission component that transmits packets and a preemption component;

- where the preemption component first signals a stop in the transmission of the transmission component's packet;

- then transmits a preempt indicator;

- that then indicates a second packet will be transmitted;

- then transmits the second packet;

- until finally the preemption component signals to the transmission component to continue transmitting.

*Id.*  Additionally, claim 21 utilizes packets with in-band symbols and indicators with out-of-band symbols.  *Id.*

### 3.     Whether the Claims are Directed to an Abstract Idea

Next, the Court determines whether this focus is an abstract idea.  "Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework."  *Twilio, Inc.*, 249 F. Supp. 3d at 1138 (citing *Alice Corp. Pty.*, 573 U.S. at 221).  It is a sign of abstraction when a claim is directed to "mental processes that can be performed in

the human mind or using a pencil and paper." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (cleaned up). Likewise, "[a] claimed method's similarity to fundamental . . . practices long prevalent is yet another clue that the claims may be abstract and unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (cleaned up). To determine whether a claim's focus is an abstract idea, courts also "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC*, 822 F.3d at 1334.

Claim 21 of the '905 patent is not directed to an abstract idea. Rather, the claimed solution of the '905 patent "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Here, claim 21 is not directed to simply any device that transmits data packets in particular order, but instead encompasses a specific device that transmits data packets over a communication link using a transmission component and with a preemption component that can preempt the transmission through a specialized process described above. *See e.g.* '905 pat., cl. 21. For instance, claim 21 recites specific, non-generic steps for the preemption component to preempt a transmission from the transmission component to transmit a second packet, including by sending a preempt indicator that indicates a second packet will be transmitted. *Id.* Additionally, claim 21 effectuates this preemption by relying on "indicators [that] include one or more out-of-band symbols." *Id.* This solves the problem identified in the specification by "ensur[ing] that data store devices receive control packets as soon as possible without being slowed by network congestion as a result of data packets." *Id.* at 19:65–20:1.

The cases relied upon by HP, primarily *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 369, 372 (Fed. Cir. 2021) and *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017), are unavailing. First, *WhitServe LLC*, a nonprecedential Federal Circuit opinion, involved a very different patent claim, both in terms of substance and structure. *WhitServe LLC,* 854 F. App'x at 368-69. The representative claim in *WhitServe LLC* encompassed a "system for onsite backup for internet-based data processing systems." *Id.* The

Federal Circuit found the claim "recite[d] a 'computer,' a 'database,' 'data processing software,' and communication via the Internet." *Id.* at 371. The patent claim then merely "rel[ied] on the ordinary storage and transmission capabilities of computers within a network and appl[ied] that ordinary functionality in the particular context of onsite backup." *Id.* at 372 (citation omitted). This was found to be an abstract idea. *Id.*

Here, claim 21 does not rely on the ordinary transmission capabilities of a computer in a network. Instead, the claim encompasses a unique device for transmitting packets via a communications link. '905 pat., cl. 21. It relies on a transmission component and preemption component—unique elements of the '905 patent—to accomplish the transmission using a specific technique. *Id.* This is not an abstract idea.

*Two-Way Media Ltd.*, is similarly inapplicable. There, the Federal Circuit found the representative patent claim "recites a method for routing information using result-based functional language." *Two-Way Media Ltd.*, 874 F.3d at 1337. In particular, the "claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way." *Id.*

In contrast, claim 21 of the '905 patent does not claim functional results without describing how to achieve the claimed results. Instead, claim 21 encompasses a device (not results) that transmits packets in a particular way. '905 pat., cl. 21. Thus, the claim is not abstract.

Because the Court finds representative claim 21 of the '905 patent is not directed to an abstract idea, the Court need not reach *Alice* step two. *See Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1363 ("Because we hold that the asserted claims are not directed to an abstract idea, we do not proceed to the second step of the inquiry.").

### B. The '798 Patent

#### 1. Representative Claim

As noted above vis-à-vis the '905 patent, the Court need not individually analyze every claim under the *Alice* rubric if certain claims are "representative." *Twilio, Inc.*, 249 F. Supp. 3d at 1141 (citing *Alice Corp. Pty.*, 573 U.S. at 224). HP contends that claim 11 is representative of all

the other asserted claims from the '798 patent: independent claims 11 and 19, as well as dependent claims 22, 23, and 25.  ECF No. 167 at 20.  UCT argues that independent claim 19 includes an "identification component" and "transmission component" as additional structural components that meaningfully distinguish independent claim 19 from claim 11.  ECF No. 184 at 15.  The Court agrees.  Claim 19 is representative of the asserted claims of the '798 patent claims, which both identify and transmit packet types.  *See* '798 pat., cl. 11 and cl. 19.  Thus, the Court treats claim 19, not claim 11, of the '798 patent as representative.

### 2.      The "Directed To" Inquiry

To start step one of the two-step *Alice* patent eligibility inquiry, the Court asks whether the representative claim is directed to a patent-ineligible abstract idea.  *Alice Corp. Pty.*, 573 U.S. at 218.  Here, HP argues "the claims of the '798 patent are directed to the abstract idea of receiving or transmitting synchronization information indicating packet type."  ECF No. 167 at 12.  Similar to the '905 patent, HP cites language from claim 11 and further argues:  "The '798 patent claims recite various generic, results-oriented steps for receiving or transmitting synchronization information," *Id.* at 20-21 (stating that claim 11's steps include "'receiving a synchronization symbol,' 'receiving a packet of symbols,' and 'indicating that the received packet of symbols has the packet type,.'" (emphasis omitted)).

UCT counters that the '798 patent claims "are directed to improved serial communications devices that use a 'synchronization symbol' that is 'separate' from a data packet and includes both 'synchronization information' and 'identifies the packet type.'"  ECF No. 184 at 16.  In support, UCT refers to claim 19, which recites:

> 19. A communications device for transmitting packet types of packets, comprising:
>
> an identification component that identifies a packet type of a packet of symbols; and
>
> a transmission component that transmits a synchronization symbol that corresponds to the identified packet type, the transmitted synchronization symbol providing synchronization information and each packet type having a different synchronization symbol and permitting an external receiving node to properly align with a synchronization primitive to be correctly aligned on a symbol boundary, and that transmits the symbols of the packet.

United States District Court
Northern District of California

United States District Court
Northern District of California

'798 pat., cl. 19.  As evidenced by its language, claim 19 encompasses a "communications device" that transmits packets made up of an identification component and transmission component.  *Id.* The identification component "identifies a packet type of a packet of symbols" and the transmission component "transmits a synchronization symbol that corresponds to the identified packet type."  *Id.*

As with the '905 patent, the focus of the "directed to" inquiry must be on the claim language.  *Trinity Info Media, LLC*, 72 F.4th at 1363.  The Court finds the language of claim 19, considered as a whole, indicates that the claim is directed to a device that transmits packet types of packets.  '798 pat., cl. 19.  That device accomplishes this transmission:

- through the use of an identification component, and a transmission component.
- The identification component identifies a packet type, and the transmission component transmits a synchronization symbol that corresponds to the identified packet type.
- Additionally, the synchronization symbol transmitted by the transmission component provides synchronization information.
- Finally, each packet type has a different synchronization symbol and permits an external receiving node to properly align with a synchronization primitive to be correctly aligned on a symbol boundary.

*Id.*

### 3. Whether the Claims are Directed to an Abstract Idea

Next, the Court determines whether this focus is an abstract idea.  The Court finds that it is not.  Rather, the claimed solution of the '798 patent "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Here, claim 19 is not directed to simply any device that transmits packet types of packets, but a specific device that transmits packets using an identification component and a transmission component that transmits a synchronization symbol corresponding to the identified packet type.  *See* '798 pat., cl. 19.  Additionally, the synchronization symbol for each packet type is different

and permits "an external receiving node to properly align with a synchronization primitive to be correctly aligned on a symbol boundary." *Id.* This solves the problem identified in the specification by ensuring "rapid detection of packet type through a synchronization primitive, rather than through a packet header, [which] can reduce the processing time of a switch." *Id.* at 14:58-61.

The cases cited by HP do not dictate a different result. For instance, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, involved patent claims that failed to "recite any assertedly inventive technology for improving computers as tools" and instead were directed to "an abstract idea for which computers are invoked merely as a tool." 50 F.4th 1371, 1378 (Fed. Cir. 2022) (citations omitted). In particular, the claims recited "abstract steps: presenting a map, having a user select a portion of that map, and then synchronizing the map and its corresponding list to display a more limited data set to the user." *Id.*

Here, claim 19 does not rely on the ordinary transmission capabilities of a computer in a network. Instead, the claim encompasses a unique device for transmitting packet types of packets. '798 pat., cl. 19. It relies on an identification component and a transmission component that transmits a specialized synchronization symbol. *Id.* This is not an abstract idea.

The Court finds representative claim 19 of the '798 patent is not directed to an abstract idea. Accordingly, because the representative claim is not directed to an abstract idea, the Court need not reach *Alice* step two. *See Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1363 ("Because we hold that the asserted claims are not directed to an abstract idea, we do not proceed to the second step of the inquiry.").

## IV.   CONCLUSION

For the reasons stated above, HP's motion for judgment on the pleadings is DENIED.

**IT IS SO ORDERED.**

Dated: February 9, 2026

_____

Noël Wise
United States District Judge

United States District Court
Northern District of California

13