United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNIVERSAL CONNECTIVITY
TECHNOLOGIES INC.,

Plaintiff,

v.

HP INC.,

Defendant.

Case No.  24-cv-04097-NW (SVK)

**ORDER REGARDING DISCOVERY
DISPUTES**

Re: Dkt. No. 256

Before the Court is the Parties' Joint Submission regarding three discovery disputes:  (1) Defendant HP Inc.'s ("HP") challenge to fifteen documents designated by Plaintiff Universal Connectivity Technologies Inc. ("UCT") as privileged;  (2) HP's request to compel UCT to supplement its responses to Interrogatory nos. 20 and 21;  and (3) UCT's request to compel HP to provide "a complete list of SKUs for its PC products with AMD processors and corresponding sales data during the damages period."  Dkt. 256.  The Court determines that these matters may be resolved without oral argument.  Civil L.R. 7-1(b).  Having considered the Parties' submissions, the record in this matter and the relevant law, the Court resolves the disputes as follows.

**A.    HP's Challenge to UCT's Assertions of Privilege**

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosure."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (internal citations omitted).  UCT's operative privilege log claims privilege over thirty-one documents.  Dkt. 256-3.  These documents are broken up into two categories by UCT:  (1) "Quarterly Business Review documents ('QBR Documents')" bearing Bates nos. UCT_PRIV_001-015 and (2) "Damages Assessment documents ('Damages Documents')" bearing Bates nos. UCT_PRIV_016-

031. Dkt. 256 at 5. HP challenges eight of the QBR Documents and seven of the Damages Documents as improperly designated. *Id.* at 8.

### 1. UCT Has Made a *Prima Facie* Showing of Attorney-Client Privilege

HP makes several arguments in support of its challenge. First, it argues that these documents "relate solely to UCT's business of monetizing patents and not legal advice;" second, HP argues that these documents were not prepared in anticipation of litigation because they were prepared before UCT owned the Asserted Patents. Dkt. 256 at 8-9. Finally, HP argues that privilege was waived over one document—UCT_PRIV_009—because it "bears the same date and title as a document produced by a third party in this case, Stout Capital," and the third-party document is not marked privilege and UCT has not attempted a clawback. *Id.* at 9. HP also includes a request that, if it does not order production, the Court at least conduct an *in camera* review of the fifteen documents at issue. *Id.* at 3.

HP's first two arguments are unavailing. While some portfolio valuations are not created in anticipation of litigation and do not convey legal advice, others may do so. Where, as here, UCT's acquisition of the portfolio of the Asserted Patents was assertedly for the purposes of litigation, the Court credits UCT's assertion that the QBR and Damages Documents at issue were prepared "for the purpose of obtaining legal advice regarding litigation claim potential, planning, and costs" and contained "legal analysis, recommendations, and confidential communications between business personnel and legal counsel." *See* Dkt. 256-3. While this assertion is not conclusive, UCT has made its "*prima facie* showing that the privilege protects the information the party intends to withhold." *Yamagata Enters., Inc. v. Gulf Ins. Co.*, No. 07-cv-00644-HDM (GWF), 2008 WL 11388696, at *15 (D. Nev. Feb. 4, 2008).

### 2. Except as to UCT_PRIV_009, HP Has Failed to Substantiate its Request for *In Camera* Review

"Where a *prima facie* showing of privilege has been made, the court is not authorized, and is certainly not obligated, to perform *in camera* review of allegedly privileged documents simply because the party opposing the privilege requests that it do so." *Id.* at *16 (citing *United States v. Zolin,* 491 U.S. 554 (1989)). "In *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–1071 (9th

United States District Court
Northern District of California

2

Cir. 1992), the [Ninth Circuit] held that the *Zolin* standard applies to both an assertion that documents may not be privileged as well as to the assertion that an exception to the privilege applies." *Yamagata*, 2008 WL 11388696, at \*16. Under the first step of the *Zolin* framework, *in camera* review is only proper if the party requesting review makes a threshold "showing of a factual basis adequate to support a good faith belief by a reasonable person" that the challenged materials may contain non-privilege information. *See In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d 826, 829 (9th Cir. 1994). The inquiry under the first step must focus "only on evidence presented by the party seeking *in camera* review." *Id.*

Here, with regard to most of the challenged documents, HP has failed to make such a showing. For most of the documents, it has proffered no *facts*, with or without evidentiary support, casting doubt upon UCT's operative privilege log.[1] *See Yamagata*, 2008 WL 11388696, at \*16 (D. Nev. Feb. 4, 2008) ("[I]*n camera* review is appropriate only after the party seeking it has submitted affidavits or other evidence to the extent it can." (citing *Wiener v. FBI*, 943 F.2d 972, 979 (9th Cir. 1991))). "*[I]n camera* review ... is designed to be invoked when the issue before the District Court could not be otherwise resolved." *Wiener*, 943 F.2d at 979.

The exception is UCT_PRIV_009. HP asserts that this document, even if privileged at some point, is no longer so because it was disclosed to a third party, Stout Capital. Dkt. 256 at 9. HP basis this assertion on the fact that "UCT_PRIV_009 bears the same date and title as a document produced by a third party in this case, Stout Capital, who was responsible for brokering the divestiture of WiLAN. Stout_00001." *Id.* While not conclusive (*e.g.*, the documents may yet turn out to be different) this is evidence sufficient to meet HP's threshold showing under step one for *this* document. *See, e.g.*, *In re Grand Jury Subpoena 92-1(SJ)*, 31 F.3d at 830. Turning to the second step, in its discretion, the Court finds that the non-voluminous nature of reviewing the one document and comparing it to Stout_00001, as well as the potential importance of the document to damages issues in this case, supports *in camera* review.

---

[1] UCT's original privilege log was deficient per this Court's Standing Order, as it failed to include the job or title information for the authors and recipients, as well as the titles of the documents. *See* Dkt. 256-2. Its amended privilege log, however, rectified these issues. *See* Dkt. 256-3.

United States District Court
Northern District of California

Accordingly, HP's request for production or *in camera* review of UCT_PRIV_001-006, 010, 016-019, 022-23 and 026 is **DENIED**.  UCT shall submit UCT_PRIV_009 and Stout_00001 by email to svkcrd@cand.uscourts.gov for *in camera* review, with no further argument, **no later than March 13, 2026**.[2]

### B.      HP's Request to Compel Supplemental Responses to Interrogatory Nos. 20-21

Interrogatory no. 20 requests that UCT state "in detail the basis for [its] contention that none of the Asserted Patents is essential to any Specified Standard identified in [its] infringement contentions, including all facts, documents, and communications that support or refute [its] contention."  Dkt. 256-1 at 1.  Interrogatory no. 21 is similar, but requests that UCT undertake an analysis to "[i]dentify each portion of each accused standard cited in [its] infringement contentions that [it] contends is optional or not required for compliance with the respective standard…."  *Id.* at 5-6.  UCT argues that these interrogatories are irrelevant to the case because it does not contend that the Asserted Patents are essential to any standard and that, in any case, it has not performed such analysis yet and will rely on "its forthcoming expert reports."  *See* Dkt. 256 at 6;  Dkt. 256-1 at 4, 9.  HP argues that they are relevant to non-infringement because of UCT's position that the accused products implement the standard in infringing ways and argues that UCT's reliance on "forthcoming expert reports" and admission in a Request for Admission ("RFA") "that the asserted patents are not essential" show that UCT must have performed some analysis.  *See* Dkt. 256 at 9-10.

The Court agrees with HP that the interrogatories are relevant to issues of infringement and non-infringement.  However, as to the burden and whether the interrogatories are premature, the Court reaches a different conclusion for each interrogatory.  Interrogatory no. 20 is a standard contention interrogatory seeking the factual bases for UCT's contentions.  *See* Dkt. 256-1 at 1.  UCT does not deny that it has "admitted" that the Asserted Patents are not essential to the standards at issue.  *See* Dkt. 256 at 6.  Having so admitted (rather than, *e.g.*, stating that it lacked a basis to admit or deny the RFA), UCT must have some factual basis for doing so.  Interrogatory

---

[2] The Court is unavailable March 13–20, 2026, and will issue a further ruling as to this document after that date.

no. 20 properly seeks that factual basis. Moreover, to the extent UCT's "forthcoming expert reports" reply on *facts* within UCT's possession, including its factual bases for contending that the Asserted Patents are not standard essential, such facts must be disclosed in response to this interrogatory. Interrogatory no. 21, by contrast, would require UCT to engage in analysis that it represents it has not yet conducted. So long as the factual bases (sought in Interrogatory no. 20) are disclosed, Interrogatory no. 21's request for UCT to create what is essentially expert analysis is improper.

HP's request is **GRANTED IN PART** and **DENIED IN PART**. UCT shall supplement its response to Interrogatory no. 20.

### C.    The Parties' Dispute Over HP's List of PC Products with AMD Processors

Finally, the Parties dispute what AMD-based PC product SKUs HP must identify for UCT (and produce sales data for). This dispute stems from confusion over the Court's prior order.

The Court clarifies its order as follows. Based on the Court's ruling on HP's Renewed Motion to Strike, UCT's charts and explanations as to representative products were "sufficient **to accuse**," *inter alia*, any of HP's personal computers incorporating an AMD processor. *See* Dkt. 242 at 6-10 (emphasis added), *motion for relief from nondispositive order denied,* Dkt. 252. Nonetheless, UCT did not **in fact accuse** all such HP products; HP points out, and UCT does not refute, that UCT did not accuse, for example, the EliteBook 645 G10, EliteBook 835 G9 and G10, the OmniBook 3, or the ProBook x360 435 G10. Dkt. 256 at 10. The Court's Order did not require HP to produce an identification of all HP PC products with AMD processors, but only an identification for "each **accused** PC product SKU." Dkt. 242 at 13 (emphasis added). Accordingly, HP is correct that products which are not accused products are outside the scope of the Court's prior order, whether or not they include AMD processors.

However, UCT's concerns about the piecemeal supplementation of HP's identification spreadsheet are well-taken. For clarity, given the impending deadline for third-party source code discovery and the Parties' impending opening expert reports, HP shall produce a single, updated

////

////

and complete excel spreadsheet containing the required "identification of CPUs, GPUs, and PD controllers for each accused PC product SKU" **no later than Friday, March 13, 2026**.[3]

**SO ORDERED.**

Dated: March 11, 2026

Susan van Keulen

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

---

[3] The Court agrees with HP that the briefly mentioned dispute over sales data is not yet ripe, because "HP has already agreed to investigate and supplement, if necessary, its sales data … for all accused AMD-based products sold in the United States." Dkt. 256 at 11. Once this final spreadsheet is compiled, HP will be strictly held to its agreements and representations, particularly in light of the impending case deadlines.